And we move to our third case this morning, Leszanczuk v. Carrington Mortgage. Good morning, Your Honors. All right, good morning. Mr. Solberg, you may proceed. Thank you. Again, my name is Patrick Solberg. I represent the plaintiff and appellant Sylvia Leszanczuk. Appellant challenges the dismissal of her breach of contract claim and her claim under the Illinois Consumer Fraud Act. With respect to the breach of contract claim, there are two issues. The first are the HUD regulations related to the type of fees and charges a lender can collect incorporated into the mortgage. The second, does HUD regulation 24 CFR 203.377 preclude the collection of fees for property inspections when the lender fails to determine whether the property is occupied prior to the initial inspection? Underlying both of these questions is the fact that the mortgage here was issued pursuant to the National Housing Act. The goal of the National Housing Act is to provide a decent and suitable living environment to every American family. To achieve this goal, the FHA insures private lenders against loss on home mortgage loans made pursuant to the Act. Having the government serve as an insurance backstop enables lenders to offer loans to low-income families at a more favorable rate than would otherwise be available in the market. In addition, as noted in PNC Bank v. Wilson, because such government-insured mortgage programs recognize that mortgages will often have difficulty making full and timely payments, HUD promulgated very specific regulations outlining the mortgage service and responsibilities of mortgages. Here, we have alleged that Appellee has a practice of assessing unnecessary fees for property inspections on recipients of FHA loans that violate a HUD regulation. Nothing can be further from the National Housing Act's goal to provide a decent and suitable living environment for every American family than to assess an additional and unnecessary fees to their debt. It is our contention that HUD regulations relating to fees and charges are incorporated into the mortgage under paragraph 8 of that mortgage. That can be found in the appendix on page 37. Paragraph 8 provides that a lender may collect fees and charges authorized by the Secretary. The mortgage does not detail what these fees and charges are. For that, the parties must look to HUD regulations. Paragraph 8 would be meaningless without incorporating HUD regulations. In dismissing the complaint, the District Court agreed with this. So paragraph 8 is permissive? It's permissive to the extent that a lender may collect fees. It doesn't have to collect fees. However, where it's not permissive is it could collect fees that have to be authorized by the Secretary. But this fee was authorized by another subsection of the mortgage. Right. So paragraph 8 is not involved here. Paragraph 8 defines how... There's three paragraphs in the mortgage that are at issue here. Paragraph 5, which allows the lender to do inspections when a property is in default. Paragraph 7, which details... It says that the lender can collect fees for actions that are necessary under the mortgage. And paragraph 8, which deals directly with fees. And our contention is because this is an FHA mortgage, in order for the lender to collect those fees, it has to be authorized by the Secretary first. Again, if not... But you're not suing under the Housing Act. You're suing for breach of contract. We're suing for breach of contract. Right. And again, this gets back to the language of paragraph 8, which is permissive, and other paragraphs of the mortgage permit this inspection and the collection of the fee. Each paragraph of the mortgage are actually permissive. Each of those paragraphs, paragraph 5, paragraph 7, both have May in there. Well, right, but if the lender is permitted to do these things, in other words, inspect the property and charge the borrower for the cost of the inspection, $20 here, then that resolves the breach of contract claim without regard to the permissive additional basis to collect this fee, which is pursuant to paragraph 8. It's our contention that that reads paragraph 8 completely out of the mortgage. Our contention is that section 203.377 of HUD precludes the collection of these fees, as interpreted by HUD. For whose benefit does that inspection requirement work in the regulations? It's two. It impacts the mortgager, but it also benefits the lender and the government. It cuts both ways. It's the government instructing. I don't see anything in the regulation that would prohibit, for example, an inspection on the 44th day after a payment was due. It's required on the 45th day, as I read the regulation, but I don't see how it would prohibit an inspection on the 44th day. But it sure looks like a means to protect the FHA's interest in the property. Right. But as part of that, they have to make a phone call. The regulation specifically says they have to determine whether or not the property is occupied. If the property is occupied, there's no need for the inspection pursuant to that HUD regulation. Right. And it's our contention here, if it's unnecessary for HUD. So what do you make of paragraph 9 of the mortgage? Because, in essence, you're arguing that we should read paragraphs 5 and 7 as if they included the kind of warning language in paragraph 9. Right? Yeah, but I, again, otherwise I don't see how you read authorized. How else would authorized be defined as otherwise permitted by the Secretary? I think, as I read the two sections, paragraph 9 is lender may accept as limited by regulations issued by the Secretary. To me, that's two sides of the same coin. And adds explicitly what you think should be implicit in the other paragraphs. This security instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary, right? Yes. Okay. So why doesn't the difference in wording weigh against implying that language where it was not included? Two things. First, to read it any other way takes authorized out of that paragraph. If it's not authorized by the Secretary, if they could get fees that are not authorized by the Secretary, then it's stripping the word from the paragraph. Authorized has to have meaning. And in order to figure out what that meaning is, you have to refer to the HUD regulations. If it's not authorized in the HUD regulations, the lender can't, in turn, turn around and charge the borrowers for it. And, again, what I would argue to keep in mind is these FHA loans are made for the benefit of clients like Arthur. One second. Can I ask you a question about your client? Yes. Mr. Solberg, you say several times in your reply brief you refer to her default as kind of manufactured. Yes. And I understand that, and I might be reasonably sympathetic to that. But as I understand your arguments here, we are taking, and you want us to take the default for granted. I assume that has something to do with your interest in being able to certify a class, because if her claim depends upon whether the default was manufactured, she'd have a hard time having a typical claim. To get into the class claims, we believe this is, Kherington has a practice of assessing inspection fees without making a phone call first. As we read the regulation, they're required to call prior to conducting visual inspections. And as soon as a default hits, regardless of whether the default is legitimate or not, they're sending out the inspections without a phone call. Therein lies the violation of the HUD regulation. Regardless of the reason for the default? Correct. Okay, so it doesn't matter what Ms. Lizanchuk's particular situation was to you? We don't believe so at all. Again, we think this is a common practice used by the bank in order to charge these fees for clients in the class. Could you address the Hayes case from the Illinois courts on incorporation of these regulations? Absolutely, Your Honor. Does it seem to require something much more explicit than we have here? The Hayes case dealt with a rehabilitation loan that was issued pursuant to HUD's 203K program. And again, I read the case and I read the underlying briefs. It's not entirely clear, but plaintiffs alleged that the lender had an obligation to appoint an inspector to supervise the construction done under her loan. There was no specific HUD regulation ever referenced, but the pleadings contained a HUD reference to a mortgagee letter. The plaintiff argued that the HUD regulation incorporated a win to the mortgage on the following provision. In many, this is what they were relying on for their mortgage contract. In many circumstances, regulations issued by the secretary will limit the lender's rights in the case of payments defaults to require immediate payment in full and foreclosure if not paid. And in that, this security instrument does not authorize acceleration of foreclosure not permitted by regulation of the secretary. It had nothing to do with hiring an inspector, which we would argue goes more towards the relationship between a lender and the government. And with respect to what the court held, the court held that these references to HUD regulations fall short of showing necessary to demonstrate that the parties intended to incorporate the regulations in their entirety into their mortgage. To be construed as incorporating an entire second document, a contract must explain an intention to completely adopt that document, not merely require compliance with specific portions. In essence, the court denied plans to attempt to bootstrap a HUD regulation that had nothing to do with the quoted selection of the mortgage into the mortgage. What the court did not do was preclude a finding that certain HUD regulations could be incorporated into the mortgage and merely deny the incorporation of all regulations based on the reference clause in the mortgage. Again, we believe Hays came down because they were psyched into a HUD regulation that had nothing to do with the clause in the mortgage, which is contrast to what we're doing here. Here, the regulation specifically addresses property inspections, and it deals directly with the relationship between our clients and the lender, not the lender and the government. And to explore with the court, I'd like to reserve the rest of my time for rebuttal. That's fine. Thank you. Mr. Levin. May it please the court. Sorry, if I take off my mask. Please. May it please the court. My name is Frederick Levin. I represent Carrington Mortgage Services, LLC. The central flaw with plaintiff's claims is that they depend on reading more into her mortgage contract and the regulation relied on in her complaint than the words of either will bear. In contrast, the district court read the contract and the regulation according to its plain language and gave both a faithful and reasonable construction. The district court's interpretation of the mortgage should be upheld because it gives effect to the mortgage clauses placed in issue in the litigation, stultifying none. In contrast, plaintiff's contract theory should be rejected because its premise is that Paragraph 8 limits Paragraphs 5 and 7 in a way that is inconsistent with the language used in all three paragraphs and is inconsistent with the mortgage as a whole. As Judge Sykes, as Your Honor, recognized, Paragraphs 5 and 7 authorize the charge at issue, the $20 charge at issue, because, as they've acknowledged, plaintiff in the complaint pleads plaintiff was in default. And that authority in Paragraphs 5 and 7 has been repeatedly recognized to allow the imposition of a single pass-through charge. Plaintiff's theory is that Paragraph 8 restricts the contractual authority given in Paragraphs 5 and 7, but nothing in the language of 8 supports the conclusion. As the court has recognized, the language of Paragraph 8 is purely permissive. It says, lender may collect fees and charges authorized by the secretary. This language contains only words of permission, not limitation. So why is that needed? What work does that sentence do? What work does that sentence do? As the district court found, and this answers the plaintiff's contention that unless Section 8 is read the way they characterize it, then it's rendered meaningless, right? The question you're now asking, what work does it do? That's my question. What work does it do? As the district court found, it creates an additional avenue of authority for collection of fees and charges. So as the district court found, charges can be authorized under Paragraph 7 for the reasons set forth in that paragraph, and in addition, if they are authorized by the secretary. And so there is an independent purpose for Section 8 that is not dependent upon its supervising and limiting Sections 5 and 7. Are there additional fees and charges that the secretary authorizes that do not also have authority or are not covered in the mortgage agreement? Well, I don't know all the different fees and charges that the secretary has authorized, right? But what I do know is the difference in language that Judge Hamilton focused on in Paragraph 9 versus Paragraph 8, right, means that Paragraph 8 does not incorporate into the contract those other authorizations by the secretary. There's a difference between, as the Hayes case points out and the Rosenbaum case points out, there's a difference between referring to something and incorporating it into the contract because the latter, of course, creates a cause of action for breach where the former does not. Yeah, go ahead, Chris. I want to ask you a question about the statutory claim here, and I'm a little troubled by one thought from the district judge to the effect that, in essence, if the fee is authorized by the mortgage, it cannot be oppressive. Suppose we've got a mortgage lender or mortgage servicer who has a brother-in-law who runs an inspection company, and the brother-in-law charges $1,000 for the drive-by inspection. Is that a problem? That would be a problem, but it's addressed in case law already. Okay, how? Because the case law construing Paragraphs 5 and 7 say two things about an authorized fee. You can look at this, read through the Walker case that you cited, which is where I think it's handled principally, which basically says the fee must be reasonable in amount, which clearly in your hypothetical it would not be, and it must be the actual cost. And it's not alleged here that this $20 fee is unreasonable. In fact, it is precisely the amount that HUD authorizes. Secondly, it's only one fee, and there's no allegation that Carrington earns a profit on this. It's literally a pass-through cost. So in the hypothetical you suggest, I think we'd be in a different world. And the Illinois courts have already taken care of that, it sounds like. Well, yes, through the adoption in Madrikowski of the Walker case, which is a California case. Ah, okay. So where I was going with the point being that there is an independent purpose to Section 8, and it is not dependent upon being incorporated into the contract or supervising the contractual right. And more to the point, its words do not support that reading, even if that's in effect relying on a canon of construction when the words of the contract are plain. And we know this, this tension between canon of construction and the plain language of the words at issue, is because plaintiffs admit in their reply brief that the words used in paragraph 8 do not convey the meaning they argue for. Rather, they specifically argue that the words, lender may collect fees and charges authorized by the secretary, must be read as if lender can collect, and here's the key word, only fees authorized by the secretary. They acknowledge that it has to have that extra word to get the meaning they want, that it doesn't have that extra word, and yet they contend that it should be, in effect, added in. And as Judge Hamilton pointed out already, paragraph 9, again, gives a textual indication that that meaning was not intended, because when the parties to the contract agreed to limit the contractual authority granted, they did so expressly with words in paragraph 9 that the lender may accept, as limited by regulations issued by the secretary, demand of payment from the borrower. And so that language tells you that when they intended a limitation, they said it expressly, and when they intended to incorporate regulations, they said that expressly, referring to regulations. Here, 8 is indefinite in the means, and we know under Illinois law regarding incorporation, as articulated in the Hayes case and the Rumsfeld case, that that is not sufficient. There must be a specific identification in the four words of the four corners of the contract the parties intended to incorporate. I want to turn briefly to the Illinois Consumer Fraud Act claim. Plaintiffs argued that the $20 charge offended Illinois public policy because it violated the regulation. The court correctly held that it did not violate the regulation because, standing on its own words, the regulation details the minimum standards of what HUD requires for its own protection, exactly the point that Judge Hamilton was alluding to. And we know that's the case. We know that was what that regulation was intended to mean, because in the transmittal published in the Federal Register, along with the final publication of the rule, the department said explicitly that the regulation sets minimum standards for mortgage servicers acceptable to the department. Minimal standards, a floor, not a ceiling, while emphasizing, and these again are the words of the department, mortgages retain full flexibility in dealing with mortgagors. And that's for precisely the reasons Judge Hamilton alluded to. So what do we make of the HUD handbook that the plaintiff relies upon, which seems to interpret this regulation the way plaintiffs would like it to read? Well, the short of it, I don't think the court need be detained long with the handbook, because HUD canceled it and superseded it effective March 16, 2016, four years before the charge at issue here. To the extent that that handbook had any relevance at all, it was not in effect. It was, in the words of the department, canceled and superseded, and that's discussed at page 35 of our brief. So I don't think the handbook has any impact at all, because whatever it meant then had no effect at the time the charge was at issue. So as the department itself, and as the district court found, the HUD regulation at issue only sets what inspections must occur. It does not purport to limit the permissive inspections authorized by 5 and 7 when, for example, the loan is in default. So Judge Hamilton's hypothetical of an inspection occurring on the 44th day is perfectly permitted under the regulation, so that to the extent, and the plaintiff's Consumer Fraud Act claim depends on a theory that we violated the regulation, and the court said we did not. And with respect to this issue involving the phone call, for the mandatory inspections that HUD requires, that may be required. But it was not required under paragraphs 5 and 7, and therefore should not form the basis of any claim either under the Consumer Fraud Act or the contract, because Carrington was proceeding appropriately under paragraphs 5 and 7. With respect to the handbook, Mr. Levin, could you address the point in Plaintiff's reply to the effect that it still looks like it's in effect on the HUD website? In the very release that we're talking about, which I'll just pull out of my notebook, they have interesting language, which is not mentioned in the reply brief. It notes that the handbook was superseded and canceled, but will continue to remain available for informational purposes only on HUD's website, along with the items listed. Where's that from? This is from the HUD transmittal of the new handbook 4000.1, which was published and superseded the handbook the plaintiffs relied upon in March of 16. And the transmittal letter that goes with it explains exactly the effect of the new handbook, which is it cancels and supersedes the old one, the one the plaintiffs relied on. Do you have a more precise citation or a specific date there? If not, that's okay. But if you've got it in front of you, I'd appreciate it if you could share it. It's on page 35 of our reply brief. I apologize. I'm sorry, 35 of our appellate brief. Yeah, okay. All right. Okay. Thanks. Okay. So it's on the website for informational purposes only, and not obviously to have the force of a binding regulation or the force of law or to be incorporated by reference into a contract to create a cause of action on a superseded and canceled handbook. And my time's about to run out, but for the reasons stated by the district court, the judgment, its judgment should be affirmed in full. Thank you, Your Honor. Thank you. Mr. Solberg, you have a little time left. Thank you, Your Honor. Regarding the HUD handbook, I was on the website this morning, and I can provide a website for you. The website for the various HUD handbooks. It's not really clear, but on top it has the HUD handbook for 4000.1. It also has listed underneath it all the various other handbooks and has listed with still, as I read it, still current HUD handbook 4330.1. On top of the website, there's a tab. If you press on the tab, it says, indicates handbooks and mortgagee letters that are superseded by handbook 4000.1. Neither 4330.1 nor the mortgagee letter 8126 are listed. And if you want, Your Honors, I could provide the website now or I could submit it after argument. Again, it's, I'll just give it, it's www.hud.gov slash program underscore offices slash administration slash HUD clips slash handbooks slash HSGH. Again, as I read HUD's website, the handbook that we rely on, 4330.1, is still current. Circling back to the cases that they rely on and find that the mortgage permits these type of fees, both Walker and McCroskey were not FHA loans. They're, as both cases, they never talked about a paragraph 8. They never talked about being insured by the FHA. They're conventional mortgages. They're different. It's our contention here, the ante for participating in an FHA mortgage insurance industry is to comply with HUD regulations. We believe that's what, that's what paragraph 8 is there for. If you want to get these fees, they have to be approved by the, by the secretary of HUD. Various courts that addressed HUD FHA loans found the same. For instance, in Inouye-Brownlee, the court held that paragraph 5 of the mortgage does not authorize, does not itself authorize the imposition of fees, only inspection. Leaving that question of fees to paragraph 8. There, the court held that in accordance with paragraph 8, lenders' right to fees, including property inspection fees, depends on the secretary of HUD having authorized the fees, presumably by promulgation of regulation. Inouye-Ruiz says the same thing. Again, we believe this is the ante for participating in an FHA insured mortgage industry. With that, I'm, I'm out of time, Your Honors. All right, thank you very much. Thanks to both counsel. The case is taken under advisory.